**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
ORBIN ZALDIVAR,

                          Plaintiff,

     v.

JANL, INC. d/b/a SERGIO'S PIZZERIA and
SERGIO OLIVERO,

                         Defendants.
--------------------------------------------------------X

                                  **REPORT AND**
                              **RECOMMENDATION**

                      23-CV-1434 (NCM) (LGD)

**LEE G. DUNST**, Magistrate Judge:

        Individual Defendant Sergio Olivero ("Olivero") is an officer and shareholder of

corporate Defendant JANL, Inc. ("JANL") (together, "Defendants"), a New York corporation

that does business as Sergio's Pizzeria—a pizza restaurant located in Glen Head, New York.

Electronic Case Filing ("ECF") No. 1 ¶¶ 6-8, 16.  Plaintiff Orbin Zaldivar ("Plaintiff") worked as

a kitchen worker at the pizzeria from July 2016 to May 2021.  *Id*. ¶¶ 42-43.

        Plaintiff sued Defendants in 2023 under the Fair Labor Standards Act, 29 U.S.C.

§§ 201 *et seq.*, ("FLSA"), and the New York Labor Law, NYLL §§ 190 *et seq.* ("NYLL) and

corresponding New York Hospitality Industry Wage Order, N.Y. Comp. Codes R. & Regs. tit.

12, §§ 146 *et seq.*, ("HIWO") (together, "NYLL"), seeking compensation for unpaid wages and

work-condition violations.  *See generally id.*

        Defendants, however, never answered the complaint.  Plaintiff, therefore, obtained a

certificate of default against them and, on April 16, 2024, moved for default judgment ("First

Motion").  ECF No. 23.  On September 24, 2024, the undersigned issued a Report and

Recommendation that the Court deny the First Motion without prejudice based on Plaintiff's

failure to follow the proper default judgment procedures set forth in the Eastern District of New

York Local Civil Rules.  ECF No. 28 ("First R&R").  Judge Merle later adopted the First R&R in full on November 13, 2024.  ECF No. 32.

On February 18, 2025, Plaintiff again moved for Default Judgment ("Second Motion").  ECF No. 33.   The Second Motion is before the undersigned on referral by Judge Merle.  Electronic Order dated February 21, 2025.  For the reasons set forth below, the undersigned respectfully recommends that the Court grant in part Plaintiff's Motion.

## I.    BACKGROUND[1]

### A.    Factual Background

#### 1.    Defendants JANL and Olivero

Corporate Defendant JANL operated as a Long Island-based pizzeria that employed individuals who regularly handled goods that had been moved in or produced for commerce.  ECF No. 1 ¶¶ 6-8, 12.  In 2018, 2019, and 2020, "JANL had an annual dollar volume of sales or business done of $500,000 or more."  *Id.* at ¶¶ 9-11.

Individual Defendant Olivero is a Nassau County resident who served as an officer and sole shareholder of JANL.  *Id.* at ¶¶ 14-16.  According to Plaintiff, Olivero "had the power to hire and fire the Plaintiff, supervised and controlled his work schedules, the conditions of his employment, determined the rate and method of his pay, and maintained records of his employment."  *Id.* ¶ 17.  Moreover, according to Plaintiff, Olivero "exercised sufficient operational control over JANL to be deemed the Plaintiff's employer under the FLSA and the NYLL."  *Id.* ¶ 18.

---

[1] The following facts are taken from Plaintiff's complaint (ECF No. 1), Plaintiff's declarations in support of their motion for default judgment (ECF No. 25, ECF No. 35), and the corresponding exhibits.  In light of Defendants' failure to challenge Plaintiff's allegations, the Court will accept all factual allegations in the complaint as true for the purposes of this Motion.  *See, e.g.*, *Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 234-35 (E.D.N.Y. 2024) (collecting cases).

2.    Plaintiff Orbin Zaldivar

Plaintiff worked at the pizzeria from July 2016 to May 2021 preparing food, washing dishes, and cleaning floors.  *Id.* ¶¶ 42-43.  Plaintiff generally worked eleven or twelve-hour shifts.  *Id.* ¶ 44.  On  Mondays, Wednesdays, Thursdays, and Fridays, those shifts typically ran from 10:00 AM to 9:00 PM.  *Id.*  And on Saturdays and Sundays from 10:00 AM to 10:00 PM. *Id.*  Thus, Plaintiff worked on average sixty-eight hours per week.  *Id.* ¶ 48.

Plaintiff's pay varied while working at the pizzeria.  From July 2016 to December 2017, Plaintiff was paid $450 a week.  *Id.* ¶ 45.  And from January 2018 to May 2021, Plaintiff was paid $500 a week.  *Id.* ¶ 46.  All payments were made in cash.  *Id.* ¶¶ 45-46.

According to Plaintiff, the pizzeria consistently failed to properly pay him.  Despite regularly working more than forty hours a week, the pizzeria failed to pay Plaintiff an overtime premium.  *Id.* ¶ 47.  Moreover, the pizzeria did not provide Plaintiff with "the minimum wages required by the HIWO for the period from December 31, 2019, until May 2021."  *Id.* ¶ 48. Plaintiff also "regularly worked a spread of hours"[2] over ten, but the pizzeria failed to pay him an additional hour of pay for each hour worked over ten per day.  *Id.* ¶¶ 52-54.

On May 5, 2021, Defendant Olivero terminated Plaintiff after Plaintiff approached him and asked him for a raise and overtime pay.  *Id.* ¶¶ 59-61.

**B.    Procedural Background**

The Court incorporates by reference—and assumes familiarity with—the facts and procedural history in this case leading up to the filing and denial of Plaintiff's First Motion set forth in the undersigned's First R&R.  *See* ECF No. 28 at 1-3.

---

[2] The "spread of hours" is the total time between the start and end of an employee's workday, including breaks, and the NYLL requires one extra hour of "spread-of-hours" pay at the minimum wage for any day where the spread of hours exceeds ten.  N.Y. Comp. Codes R. & Regs. Tit. 12, § 142-2.4.

On February 18, 2025, Plaintiff filed the Second Motion along with supporting documents.  ECF No. 33 (Second Motion); ECF No. 34 (memorandum in support); ECF No. 35 (declaration in support).  Two days later, Plaintiff filed proof of service by mail of the Second Motion and supporting materials on both Defendants.  ECF No. 36.  Judge Merle then referred the Second Motion to the undersigned for a Report and Recommendation.  Electronic Order dated February 21, 2025.

On May 9, 2025, the Court ordered Plaintiff to file a supplemental letter in further support of their Second Motion.  *See* Electronic Order dated May 9, 2025.  Specifically, the Court ordered Plaintiff to supplement "Plaintiff's allegations regarding the claimed nexus to interstate commerce," and "whether Plaintiff has adequately satisfied the $500,000 sales threshold under the FLSA."  *Id.*  Plaintiff filed their supplemental letter at ECF No. 39.

On June 5, 2025, Plaintiff voluntarily stipulated to dismiss counts five through nine of the complaint.  ECF No. 41.  Judge Merle subsequently dismissed those claims without prejudice.  Electronic Order dated June 10, 2025.  Therefore, Plaintiff's sole remaining claims are for unpaid overtime wages under the FLSA (count one), unpaid minimum wages under the NYLL (count two), unpaid overtime wages under the NYLL (count three), and unpaid spread-of-hours pay under the NYLL (count four).  ECF No. 1 ¶¶ 62-89.

## II.     LEGAL STANDARD

### A.     Default Judgement

Federal Rule of Civil Procedure ("Rule") 55 sets out a two-step process for obtaining a default judgment.  Fed. R. Civ. P. 55(a)-(b).  First, the movant must obtain a certificate of default from the Clerk of the Court.  *Id.* 55(a).  Once default has been entered, then, at the plaintiff's request, the Clerk must enter default judgment if "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation."  *Id.* 55(b)(1).  If the calculation of damages

requires any level of discretion, the plaintiff may instead move the court to enter a default judgment. *Id.* 55(b)(2).

In evaluating a motion for default judgment, the court "must ensure that (1) jurisdictional requirements are satisfied; (2) the plaintiff took all the required procedural steps in moving for default judgment; and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law." *Cooper v. Fire & Ice Trucking, Corp.*, No. 23-CV-1675, 2024 WL 3344001, at *3 (E.D.N.Y. July 9, 2024).

The court also must find "a basis for the damages specified in the default judgment." *Jeremiah v. 5 Towns Jewish Times, Inc.*, No. 22-CV-5942, 2023 WL 5703698, at *5 (E.D.N.Y. Sept. 5, 2023). "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914, 2023 WL 6338666, at *12 (E.D.N.Y. Sept. 29, 2023) (quoting *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 189 (2d Cir. 2015)). The court must satisfy itself that plaintiff has met the burden of proving damages to a "reasonable certainty." *Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 252 (E.D.N.Y. 2024).

## III.    DISCUSSION

### A.    Jurisdiction

The Court "may not enter a default judgment unless it has both subject-matter jurisdiction over the action and personal jurisdiction over each defendant." *Cooper*, 2024 WL 3344001, at *3 (citing *Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980)).

#### 1.    Subject-Matter Jurisdiction

Under 28 U.S.C. § 1331, the Court has original jurisdiction over Plaintiff's FLSA claim (count one). The Court also may exercise supplemental jurisdiction over Plaintiff's NYLL

claims (counts two through four) under 28 U.S.C. § 1367(a), because they arise out of the same facts and circumstances as the FLSA claim. *See, e.g.*, *Perez v. 50 Food Corp.*, No. 17-CV-7837, 2019 WL 7403983, at *4 (S.D.N.Y. Dec. 4, 2019), *report and recommendation adopted*, 2020 WL 30344 (Jan. 2, 2020) (exercising supplemental jurisdiction over NYLL claims arising out of the same facts and circumstances as FLSA claim).

2.    Personal Jurisdiction

The Court finds that it has personal jurisdiction over Defendants. Personal jurisdiction must comport with both state law and the Due Process Clause of the United States Constitution. *See Relevant Sports, LLC v. U.S. Soccer Fed'n, Inc.*, 61 F.4th 299, 305 (2d Cir. 2023) (analyzing personal jurisdiction under New York law and the Due Process Clause). New York law authorizes personal jurisdiction over domestic corporations and individuals whose place of domicile is within the state. N.Y. C.P.L.R. § 301. Further, constitutional due process requirements are satisfied where a corporate defendant is sued in its state of incorporation or principal place of business and where an individual defendant is sued in their place of domicile. *See EZ Drop Shipping, LLC v. Alfrey*, No. 24-CV-522, 2024 WL 4250326, at *4 (E.D.N.Y. Aug. 23, 2024) (describing circumstances where "general personal jurisdiction" satisfies the Due Process Clause).

Corporate Defendant JANL is a New York corporation that operates a pizzeria located in Glen Head, New York. ECF No. 1 ¶¶ 6-8. Thus, the Court may exercise personal jurisdiction over JANL in accordance with state law and the Due Process Clause. *See* N.Y. C.P.L.R. § 301; *Alfrey*, 2024 WL 4250326, at *4.

Plaintiff does not allege individual Defendant Olivero's domicile. However, they allege that he resides in Nassau County, that he transacted business as an officer and shareholder of JANL, and that he was involved in the day-to-day operation of the New York-based pizzeria.

6

ECF No. 1 ¶¶ 14-18.  Thus, the Court is satisfied that it may exercise personal jurisdiction over Olivero in accordance with state law and the Due Process Clause.  *See* N.Y. C.P.L.R. § 301; *Alfrey*, 2024 WL 4250326, at *4.

### B.    Procedural Requirements

"A motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules."  *Jimenez*, 744 F. Supp. 3d at 241-42.  Before the court will enter a default judgment, Plaintiff must show that Defendants were properly served, and that entry of default was appropriate.  *See Cooper*, 2024 WL 3344001, at *5. Additionally, Eastern District of New York Local Civil Rule ("Local Rule") 55.2 requires Plaintiff to attach certain materials to the motion for default judgment and file proof that all motion papers were served on or mailed to the Defendants.  *See* E.D.N.Y. Loc. Civ. R. 55.2.

### 1.    Federal Rule of Civil Procedure 4

The Court finds that Plaintiff properly served Defendants JANL and Olivero with the summons and complaint.  Under Rule 4(e)(1) and 4(h)(1)(A), a party may serve an individual and a corporation in accordance with the rules of the "state where the district is located or where service is made."  Fed. R. Civ. P. 4(e)(1); *id.* 4(h)(1)(A).

As to JANL, New York law permits service by "delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service."  N.Y. Bus. Corp. L. § 306(b)(1).  Here, Plaintiff's process server delivered a copy of the summons and complaint to an agent of the New York secretary of state.  *See* ECF No. 10. Thus, Plaintiff properly served JANL.

As to Olivero, New York law permits service "by affixing the summons to the door" of the defendant's "dwelling place or usual place of abode" and also mailing it to the defendant's "last known residence."  N.Y. C.P.L.R. § 308(4).  This method, however, is available only if

personal delivery to the defendant (*id.* § 308(1)) or to a person of suitable age and discretion at the defendant's residence (*id.* § 308(2)) cannot be accomplished with due diligence. *Id.* § 308(4). Here, Plaintiff's process server attests that they served Olivero by "posting the documents in a conspicuous place" at his residence "in plain site on [the] front door." ECF No. 11. at 1. Plaintiff's process server also made a first class mailing of the required documents to Olivero's residence. *Id.* Plaintiff's process server further detailed attempts to serve Olivero personally at his residence or, alternatively, to deliver process to a person of suitable age and discretion at the residence: "[n]o answer at door. 2 cars observed in driveway, same as on prior attempts." *Id.* Plaintiff's process server also detailed similar attempts to personally serve Olivero on three prior occasions. *Id.* at 2. Thus, service was permissible under N.Y. C.P.L.R. § 308(4), and Plaintiff properly served Olivero.

### 2.    Entry of Default

The Court next finds that the Clerk of Court properly entered a certificate of default against JANL and Olivero.

Because Plaintiff served JANL on July 5, 2023 (*see* ECF No. 10), it was required to respond to the complaint by July 26, 2023. Fed. R. Civ. P. 12(a)(1)(A)(i). And because Plaintiff served Olivero on July 15, 2023 (*see* ECF No. 11), he was required to respond to the complaint by August 7, 2023. Fed. R. Civ. P. 12(a)(1)(A)(i). When Defendants failed to do so, Plaintiff requested a certificate of default. ECF No. 15. The Clerk of the Court properly entered a certificate of default against JANL and Olivero on August 28, 2023. ECF No. 16.

### 3.    Local Civil Rule 55.2[3]

The Court next finds that Plaintiff complied with the procedural requirements set forth in

---

[3] The Eastern District of New York Local Civil Rules were updated on January 2, 2025. *See* E.D.N.Y. Loc.

Local Rule 55.2 as to both Defendants.

Local Rule 55.2 sets forth the procedural requirements for seeking a default judgment. "Courts within this District generally require strict compliance with the Local Rules." *Amador v. 109-19 Food Corp.*, No. 21-CV-4633, 2025 WL 1032031, at *11 (E.D.N.Y. Mar. 14, 2025), *report and recommendation adopted*, 2025 WL 1031133 (Apr. 7, 2025). "In many cases, failure to comply with Local Civil Rule 55.2 is a basis to deny a motion for default judgment." *Id.* (cleaned up). With that said, courts in this District may excuse minor violations of Local Rule 55.2 where the "complaint and default judgment papers provide sufficient notice of the relief sought as part of the motion for default judgment, and if the noncompliance does not prejudice the defendants." *Id.* (cleaned up).

> a)    *Local Rule 55.2(a)(1)(A)-(C)*

First, the movant must file an affidavit or declaration showing (1) that the Clerk of the Court entered default, (2) that the movant has complied with the Servicemembers Civil Relief Act, 50a U.S.C. § 521 ("SCRA"), and (3) that the party against whom judgment is sought is not known to be a minor or incompetent person. E.D.N.Y. Loc. Civ. R. 55.2(a)(1)(A)-(C).

Plaintiff has met these requirements. *See* ECF No. 35 ¶¶ 4, 7-8 (declaration in support of motion affirming that the Clerk of the Court entered default and detailing Plaintiff's compliance with the SCRA); ECF No. 35-2 (Clerk's certificate of default attached to declaration); ECF No. 35-6 (SCRA search report from September 2024); ECF No. 35-7 (SCRA search report from February 2025).[4]

---

Civ. R. 1.1. Local Rule 1.1 provides that the 2025 version of the rules govern actions pending after that date. *Id.* Plaintiff's Second Motion was filed February 18, 2025. Therefore, the Court will apply the 2025 version of the Local Rules.

[4] Plaintiff does not explicitly state in his declaration that Olivero is not known to be a minor or incompetent person. *See* ECF No. 35. The SCRA search reports attached to Plaintiff's declaration list Olivero's birth year as

> b)      *Local Rule 55.2(a)(2)-(3)*

Next, the movant must file (1) a memorandum of law, (2) a proposed order detailing the proposed judgment to be entered, and (3) a certificate of service stating that all documents in support of the motion, including the Clerk's certificate of default, have been personally served on or mailed to the last known residence (for an individual) or business address (for a company). E.D.N.Y. Loc. Civ. R. 55.2(a)(2)-(3).

Plaintiff met each of these requirements. ECF No. 34 (memorandum of law); ECF No. 33-1 (proposed order); ECF No. 36 (certificate of service).

> c)      *Local Rule 55.2(c)*

Finally, the movant must file "a statement of damages, sworn or affirmed to by one or more people with personal knowledge, in support of the request, showing the proposed damages and the basis for each element of damages, including interest, attorney's fees, and costs." E.D.N.Y. Loc. Civ. R. 55.2(c).

Plaintiff met this requirement. ECF No. 35-4 (damages computation); ECF No. 35-5 (damages formula).

## C.      Liability

Having assured itself that the jurisdictional and procedural prerequisites to enter a default judgment are met, the Court must now "assess whether Plaintiff's well-pleaded factual allegations establish Defendants' liability as a matter of law." *Cooper*, 2024 WL 3344001, at *6.

> 1.      <u>Statute of Limitations</u>

At the outset, the Court considers whether Plaintiff's claims are timely under the

---

1960, which confirms that he is not a minor. *See* ECF No. 35-6; ECF No. 35-7. But it is still unclear whether or not Olivero is known to be an incompetent person. Nevertheless, the Court excuses Plaintiff's strict compliance with this requirement because the Court finds that Plaintiff gave Olivero sufficient notice of this motion and Plaintiff's error is nonprejudicial to Olivero. *See Amador*, No. 21-CV-4633, 2025 WL 1032031, at *12 (excusing technical violation of Local Rule 55.2 where defendant had notice of the motion and error was nonprejudicial).

applicable statutes of limitations.

The FLSA's statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).  "When a defendant defaults, the violation is considered willful and the three-year statute of limitations applies."  *Flores v. Andy Constr. NY Inc.*, No. 22-CV-6486, 2024 WL 2940191, at *7 (E.D.N.Y. Apr. 14, 2024), *report and recommendation adopted*, 2024 WL 3914859 (Aug. 23, 2024) (quoting *Esquivel*, 2023 WL 6338666, at *5).  The statute of limitations for NYLL claims is six years.  *See* N.Y. Lab. L. §§ 198(3), 663(3).

Here, Defendants defaulted, so the three-year statute of limitations under the FLSA applies.  *See Flores*, 2024 WL 2940191, at *7.  Plaintiff seeks compensation for alleged unpaid overtime wages spanning his entire employment from July 2016 to May 2021.  *See* ECF No. 35-4.  Plaintiff filed the complaint on February 23, 2023 (*see* ECF No. 1) and therefore, the limitations period for Plaintiff's FLSA claims extends to February 23, 2020.  *See* 29 U.S.C. § 255(a).  Thus, Plaintiff's FLSA claim only covers conduct beginning on February 23, 2020 and running through May 1, 2021 ("FLSA limitations period").

The NYLL's six-year statute of limitations likewise limits liability for some of Plaintiff's claims.  The limitations period for Plaintiff's NYLL claims extends to February 23, 2017.  *See* ECF No. 1; N.Y. Lab. L. §§ 198(3), 663(3).  Therefore, Plaintiff's NYLL claims only cover conduct beginning February 23, 2017 and running through May 1, 2021 ("NYLL limitations period").

Accordingly, the Court respectfully recommends that Plaintiff's Motion be denied as to any FLSA violations that took place prior to February 23, 2020, and be denied as to any NYLL violations that took place prior to February 23, 2017.

2.    Employer-Employee Relationship Under the FLSA and NYLL

To establish FLSA and NYLL liability,[5] Plaintiff must first show an employer-employee relationship between himself and each Defendant.  *Cooper*, 2024 WL 3344001, at *6-7 (assessing employer-employee relationship on motion for default judgment).  The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d).

In order to determine employer status, courts in this circuit assess the "economic reality" of the relationship between the plaintiff and defendant, considering "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-05 (2d Cir. 2013) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008)); *see also Xia v. 62-98 Realty LLC*, No. 19-CV-1203, 2024 WL 5181633, at *5-6. (E.D.N.Y. Dec. 19, 2024) (describing economic reality test factors).  Courts must consider the totality of the circumstances, and no single factor is dispositive.  *Irizarry*, 722 F.3d at 106.

In addition to the economic reality test, individual defendants who are owners, officers, or otherwise make corporate decisions on behalf of a defendant company must also have "operational control" over the company "in a manner that relates to the plaintiff's employment." *Id.* at 109-10.  An individual defendant "exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions

---

[5] Because courts in the Second Circuit interpret employer-employee relationships under the NYLL coextensively with the FLSA, the Court analyzes this threshold issue based on the FLSA's definitions.  *See, e.g.*, *Vasquez v. Bolla Operating L.I. Corp.*, No. 22-CV-7014, 2025 WL 1029391, at *3 (E.D.N.Y. Feb. 25, 2025), *report and recommendation adopted*, 2025 WL 957555 (Mar. 31, 2025).

of the employees' employment." *Id.* at 110.  To prove operational control "the relationship between the individual's operational function and the plaintiffs' employment must be closer in degree than simple but—for causation." *Id.*

Under the economic reality test, the Court finds that Defendants JANL and Olivero are employers as defined by the FLSA and NYLL.  Plaintiff alleges that he worked for JANL, d/b/a Sergio's Pizzeria, as a kitchen worker from July 2016 to May 2021.  ECF No. 1 ¶¶ 42-43.  Plaintiff further claims that Defendants—through Olivero—"had the power to hire and fire the Plaintiff, supervised and controlled his work schedules, the conditions of his employment, determined the rate and method of his pay, and maintained records of his employment." *Id.* ¶ 17.  Plaintiff also avers that Olivero—as an officer/shareholder of JANL—"exercised sufficient operational control over JANL to be deemed the Plaintiff's employer under the FLSA and the NYLL." *Id.* ¶ 18.  Finally, Plaintiff alleges that on May 5, 2021, Plaintiff spoke to Olivero and asked him "for a raise" and "to be paid time and a half for his overtime hours," and that, in response to this request, Olivero "terminated" him.  *Id.* ¶¶ 60-61.

Most of these allegations merely parrot the economic reality test factors in conclusory fashion and, standing alone, would not suffice.  *See, e.g.*, *Jurado v. Sabor Hispano, Inc.*, No. 20-CV-1104, 2021 WL 11690645, at *8 (E.D.N.Y. Aug. 5, 2021) (finding that plaintiff's "boilerplate allegations that simply recite[d] the elements of the economic reality test" were "insufficient to establish that [plaintiff] was employed by [d]efendants" on a motion for default judgment).  However, Plaintiff also alleges a specific incident on May 5, 2021 in which he requested a raise and overtime pay from Olivero, and Olivero immediately terminated him.  ECF No. 1 ¶¶ 60-61.  This factual allegation demonstrates that Olivero exercised actual authority over Plaintiff's employment, including the power to terminate him, which directly bears on factor one

of the economic reality test. *See Irizarry*, 722 F.3d at 105. It further supports a reasonable inference that Olivero also controlled Plaintiff's working conditions and pay, which bears on factors two and three. *See id.*

Accordingly, the Court finds that both JANL and Olivero are Plaintiff's employers under the FLSA and NYLL. Plaintiff's allegations that JANL owned and operated the pizzeria where he worked and controlled the terms of his employment are sufficient to establish JANL's status as an employer under the FLSA and NYLL. Moreover, while many allegations as to Olivero are conclusory, Plaintiff's specific allegation that Olivero terminated him after he requested a raise and overtime pay demonstrates direct authority over his employment, establishing Olivero's operational control over JANL in relation to the Plaintiff. *See Juarez v. 156-40 Grill LLC*, No. 15-CV-5081, 2023 WL 12096468, at *12 (E.D.N.Y. Mar. 31, 2023), *aff'd sub nom. Juarez v. Siderakis*, No. 23-7972, 2024 WL 5135383 (2d Cir. Dec. 17, 2024) (finding that individual defendant had operational control over restaurant employees where individual defendant "had the authority to hire and fire and exercised control over employee schedules and duties").

### 3.    FLSA Coverage[6]

Next, Plaintiff must show that the FLSA covers his employment relationship. Coverage exists if the plaintiff either (1) was personally "engaged in commerce or in the production of goods for commerce," (individual coverage), or (2) was "employed in an enterprise engaged in commerce or in the production of goods for commerce" (enterprise coverage). 29 U.S.C. §§ 206(a), 207(a)(1). For enterprise coverage, the employer must have both "annual gross

---

[6] Unlike the FLSA, the NYLL does not have a coverage requirement. *See, e.g.*, *Borja v. MSK Rest. Corp.*, No. 22-CV-6178, 2025 WL 951402, at *13 (E.D.N.Y. Mar. 13, 2025), *report and recommendation adopted*, 2025 WL 948122 (Mar. 29, 2025) ("Unlike the FLSA, the NYLL does not have a minimum revenue requirement or necessitate participation in interstate commerce."). Thus, because the Court finds that an employment relationship has been established, Plaintiff's NYLL claims reach Defendants.

volume of sales made or business done [of] not less than $500,000," and have "employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." *Id.* § 203(s)(1)(A)(i)-(ii).

The Court finds that Plaintiff's employment relationship is covered by the FLSA for certain years because Defendant JANL is an "enterprise engaged in commerce." Plaintiff alleges that for calendar years 2018, 2019, and 2020 JANL "had an annual dollar volume of sales or business done of $500,000 or more." ECF No. 1 ¶¶ 9-11. Plaintiff also contends that "[d]uring the relevant time period, Defendant JANL's employees handled and/or worked upon goods that had been moved in or produced for commerce, including, but not limited to, ingredients such as flour, pasta, lettuce, olives, spinach, fish, beef, veal, and cheese." *Id.* ¶ 12.

Plaintiff's allegations are largely conclusory. However, courts in this District generally accept that a corporate Defendant had gross annual revenue in excess of $500,000 to be true when assessing a default judgment motion even where such allegations are conclusory. *See, e.g.*, *Borja v. MSK Rest. Corp.*, No. 22-CV-6178, 2025 WL 951402, at *11 (E.D.N.Y. Mar. 13, 2025), *report and recommendation adopted*, 2025 WL 948122 (Mar. 29, 2025) (finding conclusory allegation that defendant restaurant "had gross annual revenue in excess of $500,000" throughout the litigation to be sufficient on motion for default judgment).

Moreover, courts in this District generally infer that a restaurant "engages in interstate commerce by nature of the restaurant enterprise itself." *Trejo v. Blanca's Bakery & Deli Inc.*, No. 23-CV-6063, 2025 WL 1029523, at *9 (E.D.N.Y. Jan. 8, 2025), *report and recommendation adopted as modified*, 2025 WL 850625 (Mar. 19, 2025); *see also Brito v. Marina's Bakery Corp.*, No. 19-CV-828, 2022 WL 875099, at *8 (E.D.N.Y. Mar. 24, 2022) ("[I]t is reasonable to infer that the tools and goods required to operate a restaurant engaging in interstate commerce of

more than $500,000 do not exclusively come from New York State."); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) ("[I]t is reasonable to infer that [a restaurant] requires a wide variety of materials to operate, for example, foodstuffs, kitchen utensils, cooking vessels, cleaning supplies, paper products, furniture, and more . . . [and] that some of these materials moved or were produced in interstate commerce.").

Accordingly, the Court finds that Plaintiff has sufficiently alleged enterprise coverage for 2018, 2019, and 2020.  Enterprise coverage only applies to those years because Plaintiff only alleges that JANL met the $500,000 threshold in 2018, 2019, and 2020 and makes no such allegation regarding the $500,000 threshold for 2017 or 2021.[7]  *See* ECF No. 1 ¶¶ 9-11.  As noted above, the FLSA limitations period covers February 23, 2020 through May 1, 2021.  *See supra* p. 11.  Because Plaintiff fails to sufficiently allege enterprise coverage for 2021, the Court recommends that the FLSA limitations period be further limited to cover only the period from February 23, 2020 to December 31, 2020.

The Court further notes that the individual coverage requirement cannot save Plaintiff's 2021 FLSA claim.  Although individual coverage does not require the $500,000 threshold (*see* 29 U.S.C. §§ 206(a), 207(a)(1)), Plaintiff has not sufficiently alleged it here.  The only allegation on this point is that "Defendant JANL's employees" handled goods that moved in commerce.  ECF No. 1 ¶ 12.  Even when taken as true, that allegation does not show that Plaintiff himself regularly engaged in interstate commerce or that such engagement was a substantial part of his work.  *See, e.g.*, *Tene v. Neuehaus Studios Inc.*, No. 23-CV-2040, 2024 WL 1270816, at *4 (E.D.N.Y. Mar. 26, 2024) ("To properly allege individual or enterprise coverage, a plaintiff

---

[7] Plaintiff states in his letter supplementing the basis for the $500,000 threshold that "[d]uring each calendar year, JANL met the FLSA income threshold."  ECF No. 39 at 1.  But in support of that blanket statement, Plaintiff cites only to those allegations in the complaint that relate to JANL's income threshold in 2018, 2019, and 2020.  *See id.*  The complaint is devoid of any allegations regarding JANL's income in 2017 or 2021.

needs to state the nature *of his work* and the nature of his employer's business with straightforward allegations connecting that work to interstate commerce.") (emphasis added); *Zavada v. Mehbizar, Inc.*, No. 23-CV-3682, 2024 WL 759351, at *3 (E.D.N.Y. Feb. 23, 2024) (finding that individual coverage did not apply to plaintiff restaurant worker that failed to allege "a single interstate component to *his work* for [d]efendants") (emphasis added).  Accordingly, individual coverage does not apply, and Plaintiff's FLSA claims should be limited to the time period above.

### 4.    Applicability of FLSA Exemptions

Certain categories of employees are exempt from the FLSA's wage and hour requirements—for example, executive, administrative, and professional employees.  *See* 29 U.S.C. § 213(a)(1).  Plaintiff, however, alleges that he worked for Defendants as a kitchen worker, (ECF No. 1 ¶¶ 42-43), and nothing in the complaint suggests that any statutory exemption applies.  The Court therefore proceeds on the basis that Plaintiff is a nonexempt employee covered by the FLSA.

Finding these threshold requirements satisfied, the Court proceeds to consider whether Defendants' alleged conduct violated the FLSA and NYLL.

### 5.    Overtime Wages Under the FLSA and NYLL

Plaintiff claims unpaid overtime wages under the FLSA (count one) and NYLL (count three).  ECF No. 1 ¶¶ 62-71, 80-84.  The FLSA and the NYLL's implementing regulations require an employer to pay an employee an overtime premium of one and one-half times the employee's regular rate for each hour the employee works above forty in a workweek.  *See* 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.2, 146-1.4.  The plaintiff has the burden of proving "that he or she was improperly compensated for the work he or she performed."  *Cooper*, 2024 WL 3344001, at *8 (citing *Kuebel v. Black & Decker Inc.*, 643 F.3d

352, 362 (2d Cir. 2011)).  On a motion for default judgment, however, "the bar to establish a plaintiff's hours worked is low," and "the court may presume that the plaintiff's recollection and estimates of the hours he worked are accurate."  *Amador*, 2025 WL 1032031, at *19; *see also Jimenez*, 744 F. Supp. 3d at 249 ("[I]t would be unfair to require more substantial proof of improper compensation when the defendant is not participating in the case and the plaintiff lacks the ability to obtain the defendant's employment records through discovery.").

Here, Plaintiff sufficiently established that Defendants violated the FLSA and NYLL's overtime pay requirements during their respective limitations periods.  Plaintiff alleges that from February 23, 2017 to December 30, 2017, Defendants paid him $450 a week (ECF No. 1 ¶ 45), and from December 31, 2018 to May 1, 2021, Defendants paid him $500 a week (*id.* ¶ 46). Despite working on average sixty-eight hours per week, Plaintiff alleges that Defendants paid him these flat rates regardless of the actual hours he worked per week over forty.  *Id.* ¶¶ 47-48. By paying Plaintiff a flat weekly salary despite him working substantial overtime, Defendants failed to pay the required overtime premium.  *See* 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.2, 146-1.4.

Thus, the Court finds Defendants liable for violating the FLSA and NYLL's overtime provisions, but only for violations that occurred during the narrowed FLSA and NYLL limitations periods set forth above—*i.e.*, from February 23, 2020 to December 31, 2020 for Plaintiff's FLSA claim, and from February 23, 2017 to May 1, 2021 for Plaintiff's NYLL claim.

6.    Minimum Wages Under NYLL

The NYLL requires an employer to pay an employee a minimum hourly rate for each hour the employee works.

In Nassau County, the NYLL required employers to pay minimum hourly wages during the NYLL limitations period as follows:

> $10.00 per hour on and after December 31, 2016;
> $11.00 per hour on and after December 31, 2017;
> $12.00 per hour on and after December 31, 2018;
> $13.00 per hour on and after December 31, 2019; and
> $14.00 per hour on and after December 31, 2020;

N.Y. Lab. L. § 652(1)(b).

"For purposes of determining whether Plaintiff was paid the prevailing minimum wage, the Court must determine his regular hourly rate of pay." *Cooper*, 2024 WL 3344001, at *8. As a restaurant worker covered by the HIWO, Plaintiff's regular hourly rate must be calculated by dividing his weekly rate by "the lesser of 40 hours or the actual number of hours worked by that employee during the work week." N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-3.5(b); *see also, e.g.*, *Chavez v. Roosevelt Tropical Corp.*, No. 23-CV-2413, 2024 WL 4244087, at *7 (E.D.N.Y. Aug. 21, 2024), *report and recommendation adopted*, 2024 WL 4242218 (Sept. 18, 2024) (calculating regular hourly rate for restaurant worker using the HIWO's forty-hour denominator). Because Plaintiff worked sixty-eight hours per week, his regular hourly rate is calculated by dividing his weekly rate by forty hours. *See, e.g.*, *Chavez*, 2024 WL 4244087, at *7.

From February 23, 2017 to December 30, 2017, Plaintiff was paid $450 a week (ECF No. 1 ¶ 45) and, as a result, Plaintiff's hourly rate under the HIWO was $11.25 per hour. For the remainder of the NYLL limitations period from December 31, 2017 to May 1, 2021, Plaintiff was paid $500 a week (*id.* ¶ 46), and Plaintiff's hourly rate under the HIWO therefore was $12.50 per hour.

Plaintiff's hourly rates are below the New York minimum wage only for December 31, 2019 to May 1, 2021:

TABLE 1.  PLAINTIFF'S REGULAR HOURLY RATE AND APPLICABLE
NYLL MINIMUM WAGE RATES DURING LIMITATIONS PERIOD

| Time period | Weekly Rate | Regular Hourly Rate (Weekly Rate/40 hours) | New York Minimum Wage |
|---|---|---|---|
| Feb. 23, 2017 – Dec. 30, 2017 | $450 | $11.25 | $10.00 |
| Dec. 31, 2017 – Dec. 30, 2018 | $500 | $12.50 | $11.00 |
| Dec. 31, 2018  – Dec. 30, 2019 | $500 | $12.50 | $12.00 |
| **Dec. 31, 2019 – Dec. 30, 2020** | $500 | **$12.50** | **$13.00** |
| **Dec. 31, 2020 – May 1, 2021** | $500 | **$12.50** | **$14.00** |

Thus, Defendants appear to have complied with the NYLL's minimum wage requirements during the NYLL limitations period from February 23, 2017 to December 30, 2019. Defendants fell out of compliance, however, when they continued to pay Plaintiff a $500 weekly rate on December 31, 2019 and thereafter, despite the increase in the minimum wage.  This finding is consistent with Plaintiff's claim that the pizzeria did not provide Plaintiff with the required "minimum wages . . . for the period from December 31, 2019, until May 2021." ECF No. 1 ¶ 49; *see also id.* ¶¶ 75-77.  Therefore, the Court finds Defendants liable for violating the NYLL's minimum wage provisions from December 31, 2019 to May 1, 2021.

7.    Spread-of-Hours Pay Under NYLL

The NYLL requires employers to pay an employee a "spread-of-hours" premium of one additional hour's pay at the basic minimum hourly rate for each workday that lasts longer than ten hours.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4.  "Although this provision only applies to those who are paid minimum wages, pursuant to the [HIWO], hospitality workers are entitled to spread of hours pay regardless of their regular rate of pay."  *Chavez*, 2024 WL 4244087, at *8 (citation omitted); *see also* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6(d).

20

Plaintiff, as a restaurant worker covered by the HIWO, is entitled to spread-of-hours wages for the entire NYLL limitations period.  *See Chavez*, 2024 WL 4244087, at *8.  Plaintiff alleges that for the entire duration of his employment, he worked shifts that exceeded ten hours—on Monday, Wednesday, Thursday, and Friday he regularly worked eleven-hour shifts, and on Saturday and Sunday he regularly worked twelve-hour shifts.  ECF No. 1 ¶ 44.  Plaintiff furthers that Defendants never paid him spread-of-hours pay for any of the days in which his shifts exceeded ten hours.  *Id.* ¶ 54.

These allegations are sufficient to establish that Defendants did not comply with New York's spread-of-hours requirement during the NYLL limitations period.  *See Chavez*, 2024 WL 4244087, at *8 (finding allegations that plaintiff "worked 11.5 hours every day but did not receive any spread of hours pay" sufficient to establish that defendants "did not comply with New York's spread of hours requirement for that period").  Thus, the Court finds Defendants liable for unpaid spread-of-hours pay from February 23, 2017 to May 1, 2021.  Plaintiff is entitled to recover one additional hour's pay at the applicable minimum hourly rate for each qualifying workday during this period.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4.

## IV.    DAMAGES

Because Plaintiff has established Defendants' liability as to Plaintiff's overtime, minimum wage, and spread-of-hours claims, the Court must now determine whether Plaintiff is entitled to the relief he requests.

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."  *Esquivel*, 2023 WL 6338666, at *12 (E.D.N.Y. Sept. 29, 2023) (quoting *Bricklayers*, 779 F.3d at 189).  In an FLSA and NYLL case, the court may "presume the accuracy of [plaintiff's] recollection and estimates

of hours worked set forth in their affidavits and damages calculations," and "a plaintiff need not compute FLSA damages with precision." *Amador*, 2025 WL 1032031, at *27 (cleaned up). However, the Court must be satisfied that Plaintiff "has met the burden of proving damages to the Court with reasonable certainty.'" *G & G Closed Cir. Events, LLC v. Clayton*, 779 F. Supp. 3d 317, 336 (E.D.N.Y. 2025) (citation omitted).

The Court addresses damages separately for each category of Plaintiff's claims, applying the applicable statutory or regulatory formula, reviewing Plaintiff's calculations, and making adjustments as necessary to arrive at the proper award.

### 1.  Overtime Damages

Plaintiff has proven Defendants' liability from February 23, 2020 to December 31, 2020 for Plaintiff's FLSA claim, and from February 23, 2017 to May 1, 2021 for Plaintiff's NYLL claim.

"The plaintiff may not recover double damages for the same injury under both the FLSA and NYLL, though the plaintiff is entitled to relief under whichever statute provides the greater measure of damages." *Cooper*, 2024 WL 3344001, at *10.  Here, because the NYLL overtime provisions cover the same period as and extend further than the applicable FLSA limitations period, and because the recoverable overtime premium is the same under both statutes, the Court calculates Plaintiff's overtime damages solely under the NYLL.  *See id.*; *see also* 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.2, 146-1.4.

Under the NYLL, overtime compensation is calculated by multiplying all hours worked over forty in a workweek by 1.5 times the greater of (a) the employee's regular hourly rate, or (b) the applicable minimum wage.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.2, 146-1.4; *see also Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929, 2022 WL 18999832, at *5 (E.D.N.Y. Dec. 13, 2022), *report and recommendation adopted*, 2023 WL 2206568 (Feb. 24,

2023), *aff'd*, 113 F.4th 300 (2d Cir. 2024) (applying NYLL overtime calculation).

The Court has reviewed Plaintiff's overtime damages calculation (*see* ECF No. 35-4; ECF No. 35-5) and finds that Plaintiff's calculation appears to be consistent with the NYLL's overtime calculation. Plaintiff's calculation, however, must be limited to February 23, 2017 through May 1, 2021. *See supra* p. 12. Thus, the Court's calculation of the amount Plaintiff should have been paid for his overtime hours is as follows:

TABLE 2.  NYLL OVERTIME DAMAGES

| Time Period | Total Weeks | Average Hours | Hours > 40 | Total OT Hours | Higher Rate[8] | OT Rate | Total Unpaid OT |
|---|---|---|---|---|---|---|---|
| Feb. 23, 2017 – Dec. 30, 2017 | 44 | 68 | 28 | 1,232 | $11.25 | $16.88 | $20,796.16 |
| Dec. 31, 2017 – Dec. 30, 2018 | 52 | 68 | 28 | 1,456 | $12.50 | $18.75 | $27,300.00 |
| Dec. 31, 2018 – Dec. 30, 2019 | 52 | 68 | 28 | 1,456 | $12.50 | $18.75 | $27,300.00 |
| Dec. 31, 2019 – Dec. 30, 2020 | 52 | 68 | 28 | 1,456 | $13.00 | $19.50 | $28,392.00 |
| Dec. 31, 2020 – May 1, 2021 | 17 | 68 | 28 | 476 | $14.00 | $21.00 | $9,996.00 |
| Total | – | – | – | – | – | – | **$113,784.16** |

Therefore, the Court finds that Plaintiff is entitled to $113,784.16 unpaid overtime wages under the NYLL.

2.    Minimum Wage Damages

As explained above, the NYLL and HIWO require calculating a restaurant worker's

---

[8] The term "Higher Rate" refers to the greater of (a) Plaintiff's regular hourly rate (calculated by dividing his weekly salary by forty hours under the HIWO), or (b) the applicable New York minimum wage. S*ee* Table 1, *supra* p. 20, for calculations of Plaintiff's regular hourly rate and minimum wages during the NYLL limitations period.

regular hourly rate by dividing the worker's weekly rate by the lesser of forty hours or the actual hours worked.  N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-3.5(b); *see also Chavez*, 2024 WL 4244087, at *7 (calculating regular hourly rate).  The Court has already determined that Plaintiff's regular hourly rate fell below the applicable minimum wage from December 31, 2019 to May 1, 2021.  *See* Table 1, *supra* p. 20.  The total amount of underpayment for minimum wages during this time is calculated by taking the difference between Plaintiff's regular hourly rate of pay and the applicable New York minimum wage, and multiplying that figure by forty hours per week.  *See* N.Y. Lab. L. § 663(1); *see also Chavez*, 2024 WL 4244087, at *10 (calculating unpaid minimum wages).  Thus, the Court's calculation of the Plaintiff's unpaid minimum wages are as follows:

TABLE 3.  PLAINTIFF'S MINIMUM WAGE DAMAGES DURING NONCOMPLIANT PERIODS

| Time Period | Total Weeks | Regular Hourly Rate | New York Minimum Wage | Hourly Under-payments | Weekly Under-payment (Hourly Underpayments x 40) | Total Under-payments |
|---|---|---|---|---|---|---|
| Dec. 31, 2019 – Dec. 30, 2020 | 52 | $12.50 | $13.00 | $0.50 | $20.00 | $1,040.00 |
| Dec. 31, 2020 – May 1, 2021 | 17 | $12.50 | $14.00 | $1.50 | $60.00 | $1,020.00 |
| **Total** | – | – | – | – | – | **$2,060.00** |

Therefore, the Court finds that Plaintiff is entitled to $2,060.00 unpaid minimum wages under the NYLL.

3.    Spread-of-Hours Damages

Under the NYLL and HIWO, a restaurant worker is entitled to "one additional hour of pay at the basic minimum hourly rate" for each day their workday exceeds ten hours, regardless

24

of their regular rate.  N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6(d); *see also Chavez*, 2024 WL 4244087, at *10 (calculating spread-of-hours damages).  Plaintiff alleges that on six days each week—Monday, Wednesday, Thursday, Friday, Saturday, and Sunday—he worked shifts exceeding ten hours and never received spread-of-hours pay.  ECF No. 1 ¶ 44.  Because Plaintiff's schedule always exceeded ten hours on these days, he is entitled to one additional hour's pay at the applicable minimum wage for each workday during the NYLL limitations period.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6(d); *Chavez*, 2024 WL 4244087, at *10.  Thus, the Court's calculation of the Plaintiff's unpaid spread-of-hours pay is as follows:

TABLE 4.  SPREAD-OF-HOURS DAMAGES DURING NYLL LIMITATIONS PERIOD

| Time Period | Total Weeks | Days / Week Over 10 Hours | Total Days Over 10 Hours | New York Minimum Wage | Spread-of-Hours Damages |
|---|---|---|---|---|---|
| Feb. 23, 2017 – Dec. 30, 2017 | 44 | 6 | 264 | $10.00 | $2,640.00 |
| Dec. 31, 2017 – Dec. 30, 2018 | 52 | 6 | 312 | $11.00 | $3,432.00 |
| Dec. 31, 2018 – Dec. 30, 2019 | 52 | 6 | 312 | $12.00 | $3,744.00 |
| Dec. 31, 2019 – Dec. 30, 2020 | 52 | 6 | 312 | $13.00 | $4,056.00 |
| Dec. 31, 2020 – May 1, 2021 | 17 | 6 | 102 | $14.00 | $1,428.00 |
| **Total** | – | – | – | – | **$15,300.00** |

Therefore, the Court finds the Court finds that Plaintiff is entitled to $15,300.00 unpaid spread-of-hours pay under the NYLL.

Based on these calculations, the Court finds that Plaintiff is entitled to $131,144.16 in unpaid overtime wages, minimum wages, and spread-of-hours pay under the NYLL.

    4.    Liquidated Damages

The NYLL further provides that a prevailing plaintiff "shall" recover "liquidated damages" equal to one hundred percent of the total wages due, "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Lab. L. §§ 198(1-a), 663(1). Because Defendants have defaulted and offered no evidence of good faith, Plaintiff is entitled to an additional amount equal to his unpaid wages in liquidated damages. *See, e.g.*, *Chavez*, 2024 WL 4244087, at *10 ("Because Defendants did not respond to the [m]otion, there is no showing of good faith, and liquidated damages are appropriate."); *Cooper*, 2024 WL 3344001, at *11 ("Defendants have not answered or otherwise appeared in this action, so they have forfeited their opportunity to prove good faith.").

Therefore, the Court finds that Plaintiff is entitled to an additional $131,144.16 in liquidated damages under the NYLL.

    5.    Prejudgment Interest

Plaintiff is entitled to prejudgment interest on his unpaid wages under the NYLL. *See* N.Y. Lab. L. § 198(1-a); *Chavez*, 2024 WL 4244087, at *11 (calculating prejudgment interest). Under New York law, prejudgment interest accrues at a statutory rate of nine percent per year. N.Y. C.P.L.R. § 5004(a). Where damages are incurred at various times, interest may be computed from "a single reasonable intermediate date." *Id.* § 5001(b). "Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." *Kim v. J&J Safetymate Corp.*, No. 22-CV-1070, 2025 WL 1384135, at *7 (E.D.N.Y. May 13, 2025).

Here, Plaintiff's NYLL claims for minimum wage, overtime, and spread-of-hours violations span from February 23, 2017 to May 1, 2021. The midpoint of this period is March 29, 2019. The total NYLL damages subject to prejudgment interest (exclusive of liquidated

26

damages) are $131,144.16.  Prejudgment interest on that amount at a rate of nine percent per year equals $11,802.97 annually, or $32.34 per day.  Accordingly, the Court recommends that, if this Report and Recommendation is adopted, Plaintiff be awarded prejudgment interest at a daily rate of $32.34 from March 29, 2019 through the date judgment is entered.

### 6.    Postjudgment Interest

Plaintiff is entitled to postjudgment interest as of right.  28 U.S.C. § 1961(a).  Thus, postjudgment interest will accrue from entry of judgment at the federal statutory rate until the judgment is paid in full.  *Id.*  Accordingly, the Court recommends that, if the Court adopts this Report and Recommendation, Plaintiff be awarded postjudgment interest at the federal statutory rate from the date of entry of judgment until payment is made in full.

### 7.    Automatic Increase if Judgment Not Satisfied

Under the NYLL, if any portion of the judgment remains unpaid ninety days after its issuance (not including post-judgment interest), the judgment automatically increases by fifteen percent.  N.Y. Lab. L. §§ 198(4), 663(4).  Accordingly, the Court recommends that the judgment provide for an automatic fifteen percent increase if any portion remains unpaid ninety days after issuance.

## V.    CONCLUSION

For the reasons set forth in this Report and Recommendation, the undersigned respectfully recommends that the Court grant in part Plaintiff's Motion for Default Judgment and direct the Clerk of Court to enter judgment in favor of Plaintiff and against Defendants jointly and severally as follows:

(1) $131,144.16 in compensatory damages for unpaid overtime and minimum wages and spread-of-hours pay under the NYLL;

(2) $131,144.16 in liquidated damages under the NYLL;

(3) Prejudgment interest on Plaintiff's compensatory damages award of $131,144.16, calculated at a per diem interest rate of $32.34 from March 29, 2019 until the date the Clerk of Court enters judgment;

(4) Postjudgment interest calculated from the date the Clerk of Court enters judgment until the date of payment, using the rate set forth in 28 U.S.C. § 1961(a); and

(5) Interest from nonpayment at the rate of fifteen percent (15%) for any amounts of the judgment, not including any post-judgment interest, that are not paid within ninety (90) days of the issuance of the judgment.

## VI.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Merle. FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS. *See Thomas v. Arn*, 474 U.S. 140, 154-55 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995). Plaintiff shall serve this Report and Recommendation on Defendants and file evidence of service on ECF forthwith.

Dated: Central Islip, New York
        August 20, 2025

**SO ORDERED**:

s/ Lee G. Dunst

**LEE G. DUNST**
United States Magistrate Judge

28